Below is an Opinion of the Court.

1

2

3

4

5

6
RANDALL L. DUNN
U.S. Bankruptcy Judge

7

8

9                    UNITED STATES BANKRUPTCY COURT

10                      FOR THE DISTRICT OF OREGON

11

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| MICHAEL W. ENDRESEN, | ) No. 11-35396-rld7 |
| JOANNE MAUREEN ENDRESEN, | ) |
| Debtors. | ) |
| | ) |
| STEPHEN P. ARNOT, CHAPTER 7 TRUSTEE, | ) |
| Plaintiff, | ) Adv. Proc. No. 14-3131-rld |
| v. | ) |
| | ) |
| MICHAEL W. ENDRESEN; | ) MEMORANDUM OPINION |
| JOANNE MAUREEN ENDRESEN; | ) |
| GREEN TREE SERVICING, LLC; | ) |
| THE BANK OF NEW YORK MELLON, F/K/A THE | ) |
| BANK OF NEW YORK, AS TRUSTEE FOR THE | ) |
| HOLDERS OF FIRST HORIZON MORTGAGE PASS- | ) |
| THROUGH CERTIFICATES, SERIES FHAMS 2004- | ) |
| AA7; | ) |
| THE BANK OF NEW YORK MELLON, AS SUCCESSOR | ) |
| TO JPMORGAN CHASE BANK, AS TRUSTEE FOR THE | ) |
| HOLDERS OF BEAR STEARNS ALT-A TRUST 2005-1 | ) |
| MORTGAGE PASS-THROUGH CERTIFICATES, SERIES | ) |
| 2005-1; | ) |
| THE BANK OF NEW YORK MELLON, F/K/A THE | ) |
| BANK OF NEW YORK, AS TRUSTEE FOR THE | ) |
| HOLDERS OF AMERICAN HOME MORTGAGE | ) |
| INVESTMENT TRUST 2004-4; | ) |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE | ) |
| FOR ADJUSTABLE RATE MORTGAGE TRUST 2005-2, | ) |
| ADJUSTABLE RATE MORTGAGE-BACKED PASS- | ) |
| THROUGH CERTIFICATES, SERIES 2005-2, | ) |
| Defendants. | ) |

Page 1 - MEMORANDUM OPINION

On December 18, 2014, I heard oral argument ("Hearing") on the motion for summary judgment ("SJ Motion") filed by plaintiff Stephen P. Arnot, Chapter 7 Trustee ("Trustee"), and the cross-motions for summary judgment ("Cross-Motions") filed by the debtor defendants Michael and Joanne Endresen (the "Endresens") and by the lender defendants, The Bank of New York Mellon (in various capacities) and Green Tree Servicing LLC (collectively, "Lenders"). At the Hearing, I announced a tentative decision followed by an extensive colloquy with counsel for the parties. At the conclusion of the Hearing, I granted the parties until Friday, January 9, 2015, to file supplemental legal memoranda on the issue as to whether a security interest in the personal property proceeds of the settlement of construction defect claims could attach and be perfected under Oregon state law by means other than as provided for in Article 9 of the Uniform Commercial Code, as adopted in Oregon ("UCC"). All parties filed supplemental memoranda by the deadline. In addition, on January 9, 2015, the Trustee filed a motion for leave to file a second amended complaint, alleging a new claim based on the theory that any security interest of the Lenders in the proceeds of the settlement is subordinate as to the Trustee. The Lenders objected to the Trustee's motion to further amend the complaint. The Trustee further filed a supplemental authority on January 29, 2015. Thereafter, I took the matter under advisement.

In preparing this Memorandum Opinion, I have carefully reviewed the parties' pleadings in this adversary proceeding ("Adversary Proceeding"), the SJ Motion and the Cross-Motions, the parties' supporting legal memoranda, the Declaration of Stephen P. Arnot, and

Plaintiff's Concise Statement of Material Facts ("Concise Statement") and
the responses by the Endresens and the Lenders to the Concise Statement.
The Lenders requested that I take judicial notice ("Judicial Notice
Request") of certain public record documents filed with county recorders'
offices, pursuant to Federal Rule of Evidence 201.  No party objected to
the Judicial Notice Request, and I have reviewed the documents specified
in the Judicial Notice Request.  I further have taken judicial notice of
the docket and documents filed in the Adversary Proceeding, in the
Endresens' main chapter 7 case, Case No. 11-35396-rld7, and in the
Endresens' currently pending chapter 13 main case, Case No. 11-39658-
tmb13, for purposes of confirming and ascertaining facts not reasonably
in dispute.  Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14
n.1 (Bankr. E.D. Pa. 2006).  In addition, I have reviewed applicable
authorities, both as cited to me and as located through my own research.

        This Memorandum Opinion sets forth my conclusions of law in
light of the record before me pursuant to Civil Rule 52(a), applicable in
the Adversary Proceeding under Rule 7052.[1]

                          I.  FACTS

        The facts in this matter are not in dispute.  In October and
November 2004, the Endresens purchased ten residential real properties
located on N. Columbia Way and N. Oregonian Avenue in Portland, Oregon
(the "Properties"), to be used as rentals.  All deeds to the Properties
were recorded in November 2004.  In connection with their purchases of

_____

        [1]Unless otherwise indicated, all chapter and section references are
to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule"
references are to the Federal Rules of Bankruptcy Procedure.   The
Federal Rules of Civil Procedure are referred to as "Civil Rules," and
the Oregon Revised Statutes are referred to as "ORS."

Page 3 - MEMORANDUM OPINION

the Properties, the Endresens obtained a series of purchase money loans secured by trust deed liens on each of the Properties.

The Lender deed of trust ("Trust Deed") in each case is a form instrument designated as "OREGON – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS Form 3038 1/01." The Lenders' Trust Deeds apparently have some variations, but the provisions relevant to the issues before me are identical in each of their Trust Deeds. Specifically, among the defined terms in each Trust Deed is "Miscellaneous Proceeds."

> (N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party . . . for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

Section 2 of each Trust Deed, entitled "Application of Payments or Proceeds," provides in relevant part:

> Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it becomes due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
>
> . . .
>
> Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Page 4 – MEMORANDUM OPINION

Section 11 of each Trust Deed, entitled "Assignment of Miscellaneous Proceeds; Forfeiture," provides in relevant part:

> All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.
>
> If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.
>
> In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.
>
> . . .

The Lenders hold the Trust Deeds on eight of the Properties as successors in interest to the original lenders.  No issue has been raised as to the standing of any of the Lenders to appear in this Adversary Proceeding.  The deeds of trust as to the remaining two Properties apparently are held by U.S. Bank National Association, as Trustee for Adjustable Rate Mortgage Trust 2005-2, Adjustable Rate Mortgage-Backed

Page 5 - MEMORANDUM OPINION

Pass-Through Certificates, Series 2005-2 ("U.S. Bank"), which has not appeared in this action, even though the docket reflects that U.S. Bank was properly served with a summons and the Trustee's First Amended Complaint.

Apparently, unbeknownst either to the Endresens or to the Lenders, the homes constructed on the Properties had defects in their construction that resulted in significant damage to the Properties over time.

The Endresens filed their chapter 7 petition on June 21, 2011. On October 17, 2011, the court entered an order discharging the Endresens and closing their main chapter 7 case as a "no asset estate."

On November 9, 2011, the Endresens filed a new chapter 13 petition, commencing Case No. 11-39658-tmb13. The Lenders' claims are provided for in the Endresens' confirmed chapter 13 plan and remain unsatisfied.

On or about May 8, 2013, the Endresens were added as co-plaintiffs in a civil action pending in Multnomah County Circuit Court entitled Pine River Properties LLC v. GLC Homes, Inc., et al., Case No. 1210-13038 (the "State Court Action"). In their complaint in the State Court Action, the Endresens alleged, among other things, that 1) construction of the ten homes on the Properties was completed in 2003, 2) the homes on all ten Properties were negligently constructed, and 3) the Endresens discovered the construction defects in the homes and related damage during the summer in 2012. The Endresens' construction defect claims alleged in the State Court Action are referred to collectively as the "Construction Defect Claims."

Page 6 - MEMORANDUM OPINION

On February 3, 2014, the court entered an order reopening the Endresens' chapter 7 case. The Trustee was duly appointed as the chapter 7 trustee in the Endresens' reopened case. On or about the same date, the Construction Defect Claims were settled for a gross amount of $318,200.

On March 21, 2014, the court entered an order approving the settlement of the Construction Defect Claims. After payment of attorneys' fees and costs, the balance of the settlement proceeds is $185,525.47 ("Settlement Proceeds"). By agreement among the parties, the Settlement Proceeds are being held in the client trust account of Aldrich Eike, P.C., the law firm that represented the Endresens in the State Court Action, pending resolution in this Adversary Proceeding.

The Trustee commenced this Adversary Proceeding by filing a complaint against the Endresens on June 11, 2014. The Endresens filed their initial answer and counterclaim on July 22, 2014. The Trustee filed an answer to the Endresens' counterclaim on the same date.

At the initial pretrial conference in the Adversary Proceeding on July 30, 2014, the court granted the Trustee's oral motion to amend the complaint to add the Lenders and U.S. Bank as defendant parties, a ruling that was documented by an order entered on August 1, 2014. The Trustee subsequently filed his First Amended Complaint on July 31, 2014. In the First Amended Complaint, the Trustee sought determinations that the Settlement Proceeds are property of the Endresens' bankruptcy estate, and that the Lenders and U.S. Bank have no enforceable interest in the Settlement Proceeds. The Endresens filed a new answer and counterclaim on August 26, 2014. The Endresens basically denied the Trustee's claims

and in their counterclaim sought a determination that the Settlement Proceeds are not property of the estate.  The Lenders also filed answers to the Trustee's First Amended Complaint, denying the Trustee's claims based on their opposing claims of superior interests in the Settlement Proceeds.  See Docket Nos. 25, 31, 32 and 49.  The Trustee filed an Answer to the Endresens' renewed counterclaim on August 26, 2014.

U.S. Bank did not respond to the Trustee's First Amended Complaint, and on September 30, 2014, the Trustee applied for entry of default against U.S. Bank.  See Docket No. 34.  A default order was entered against U.S. Bank in the Adversary Proceeding on October 1, 2014.  See Docket No. 37.

The Trustee filed his SJ Motion on October 6, 2014.  After a scheduling conference at which deadlines for cross-motions, responses and replies and the Hearing date were discussed, a Summary Judgment Scheduling Order was entered on October 27, 2014.  See Docket Nos. 51 and 53.  Thereafter, the Cross-Motions, responses and supporting papers, and a reply were filed according to the timetable set in the Summary Judgment Scheduling Order.  As noted above, after a lively discussion at the Hearing, I gave the parties time to file supplemental memoranda with respect to a limited issue(s) by January 9, 2015.  All parties availed themselves of that opportunity.  See Docket Nos. 75, 76 and 78.  I have taken the SJ Motion and Cross-Motions under advisement.

## II.  JURISDICTION

I have jurisdiction to decide the SJ Motion and the Cross-Motions under 28 U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(A), (B), (C), (K) and (O).

Page 8 - MEMORANDUM OPINION

III.  DISCUSSION

2   A.  <u>Summary Judgment Standards</u>

3        Under Civil Rule 56(a), applicable under Rule 7056, summary

4   judgment is appropriate when "the movant shows that there is no genuine

5   dispute as to any material fact and the movant is entitled to judgment as

6   a matter of law."  Since all material facts in the matters before me are

7   undisputed, deciding the SJ Motion and the Cross-Motions by resolving

8   questions of law only is appropriate.

9   B.  <u>Property of the Estate</u>

10       The Trustee argues that the Settlement Proceeds are property of

11  the Endresens' bankruptcy estate because, although the Endresens did not

12  discover the claims they asserted in the State Court Action until the

13  summer of 2012, postpetition, the Construction Defect Claims, ultimately

14  resulting in there being Settlement Proceeds, arose in 2003 when the

15  residences on the Properties were constructed, many years prepetition.

16       The term "property of the estate" under § 541 is very broad.

17  It generally includes "all legal or equitable interests of the debtor in

18  property as of the commencement of the case." § 541(a)(1).  That includes

19  claims or causes of action in litigation, including tort claims.  <u>Sierra</u>

20  <u>Switchboard Co. v. Westinghouse Elec. Corp.</u>, 789 F.2d 705, 707 (9th Cir.

21  1986), citing <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 205 &

22  n.9 (1983); <u>Goldstein v. Stahl (In re Goldstein)</u>, Opinion in BAP No. CC-

23  14-1346-TaDPa (9th Cir. BAP March 3, 2015).  It also generally includes

24  "[p]roceeds, product, offspring, rents, or profits of or from property of

25  the estate" (§ 541(a)(6)) and "[a]ny interest in property that the estate

26  acquires after the commencement of the case" (§ 541(a)(7)).  The breadth

Page 9 - MEMORANDUM OPINION

of the concept of property of the estate in the Bankruptcy Code reflects the intention of Congress "to include all legally cognizable interests although they may be contingent and not subject to possession until some future time." Rau v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425 (9th Cir. 1984), citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 175-76 (1977), reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6136. As conceded by the Endresens, the purpose of the expansive reach of "property of the estate" is to ensure that anything of value claimed by the debtor can be liquidated and distributed to maximize the creditors' recovery. See Defendants Michael and JoAnne Endresen's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment ("Endresens' Opposition Memorandum"), at 5-6.

However, relying on Oregon state law, the Endresens argue that the Construction Defect Claims did not "accrue" until they discovered them postpetition, and, consequently, the Settlement Proceeds, as a product of the resolution of claims that arose postpetition, are not property of the estate. I disagree for the following reasons.

"Property interests are created and defined by state law." Butner v. United States, 440 U.S. 48, 55 (1979). However, what is property of a bankruptcy estate ultimately is a matter to be determined under federal law. Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d at 708-09 ("By adopting a comprehensive definition of property, the Bankruptcy Reform Act reduced the bankruptcy court's cumbersome reliance on state law analysis for determining property to be included in the estate.").

Page 10 - MEMORANDUM OPINION

The Endresens cite three Oregon appellate decisions in support of their argument that the Construction Defect Claims did not "accrue" until after their chapter 7 filing.  See Abraham v. T. Henry Const., Inc., 350 Or. 29, 249 P.3d 534 (2011); Berry v. Branner, 245 Or. 307, 421 P.2d 996 (1966); and Tavtigian-Coburn v. All Star Custom Homes, LLC, 266 Or. App. 220, 337 P.3d 925 (2014).  The decision in Berry v. Branner focused on the definition of the word "accrued" in the context of Oregon's general limitations statute, ORS 12.010, and concluded that the limitations period did not begin to run until the subject medical malpractice claim was discovered or reasonably should have been discovered.  245 Or. at 312-16, 421 P.2d at 998-1000.  The Abraham and Tavtigian-Coburn decisions stand for the same principle: tort claims do not "accrue" under Oregon law for limitations purposes until the claimant is aware or reasonably should be aware of them.  Abraham, 350 Or. at 34 n.3, 249 P.3d at 536 n.3; Tavtigian-Coburn, 266 Or. App, at 221, 337 P.3d at 926.

Generally, to determine when a claim accrues, a bankruptcy court looks to state law.  Cusano v. Klein, 264 F.3d 936, 947 (9th Cir. 2001).  "It is important, however, to distinguish principles of accrual from principles of discovery and tolling, which may cause the statute of limitations to begin to run after accrual has occurred for purposes of ownership in a bankruptcy proceeding."  Id., citing State Farm Life Ins. Co. v. Swift (In re Swift), 129 F.2d 792, 796, 798 (5th Cir. 1997).

> The accrual of a cause of action is a concept closely tied to the fundamental purpose of a cause of action – to make an injured party whole.  Damages, then, are a prerequisite to a cause of action.  Without damages, there is no injury to remedy.

The purpose of statutes of limitation is different: they bar the litigation of stale claims at a time removed from when the pertinent events occurred. The concept of accrual is important to the statute of limitations because accrual sets the clock in motion. But the running of the statute of limitations is influenced by more than just the concept of accrual. In this connection, to avoid harsh and unfair consequences that may result from the premature running of the statute of limitations, Texas [like Oregon] adopted the "discovery" rule. Under this rule, the statute of limitations does not begin to run until the injured party "discovers" or with the exercise of reasonable care and diligence should have discovered that a particular injury has occurred. The result is that the statute of limitations may begin to run on a date other than that on which the suit could first be maintained. A classic example illustrates this. Consider a case of medical malpractice in which the treating physician has left a dangerous metal instrument inside the body of his patient [exactly as occurred in Berry v. Branner]. At the time the doctor finishes the surgery, the doctor has completed a tort. He has violated a legal duty owed to the patient, and the patient was injured by that violation. If the patient instituted suit at this moment, his suit would be viable. The statute of limitations has not begun to run, however. Under the discovery rule, the statute of limitations is tolled until the patient either discovers or should have discovered that an injury has occurred. This example shows that the dates of accrual and the start of the running of the statute of limitations may vary greatly. Unfortunately, many cases applying the principles of the discovery rule are written in terms of accrual.

. . .

We are determining when the causes of action accrued for purposes of ownership in a bankruptcy proceeding. The time of discovery of the injury is not relevant to this inquiry. A cause of action can accrue for ownership purposes before the statute of limitations for that cause of action has begun to run. Our focus, then, is upon the moment the injury occurred. The three statute of limitations cases cited are not helpful in this case [or in this one] because of their reliance upon discovery.

Id. See Tyler v. DH Capital Management, Inc., 736 F.3d 455, 462 (6th

Page 12 - MEMORANDUM OPINION

Cir. 2013):

> [A]ll causes of action that hypothetically could have
> been brought pre-petition are property of the estate.
> <u>Bd. Of Trustees of Teamsters Local 683 Pension Fund v.
> Foodtown, Inc.</u>, 296 F.3d 164, 169 n.5 (3d Cir. 2002).
> This is the case "even if the debtor[ ] w[as] unaware
> of the claim." <u>In re Michael</u>, 423 B.R. 323, 330
> (Bank. D. Idaho 2009); <u>see also</u> <u>Blakely v. Alvarez (In
> re Alvarez)</u>, 224 F.3d 1273, 1276 n.7.

<u>Id.</u> at 463 ("[A]ccrual for the purposes of § 541 is different from accrual for statute-of-limitations purposes."), citing <u>In re Swift</u>, 129 F.3d at 798. "[I]f a claim 'could have been brought,' it has accrued." <u>In re Goldstein</u>, Opinion in BAP No. CC-14-1346-TaDPa (9th Cir. BAP March 3, 2015), quoting <u>In re Cusano</u>, 264 F.3d at 947.

        In determining whether assets are "prepetition" assets that are owned by the estate or "postpetition" assets that should be recognized as the debtor's, free of estate claims, the touchstone is the Supreme Court's Bankruptcy Act decision in <u>Segal v. Rochelle</u>, 382 U.S. 375 (1966). In <u>Segal</u>, the Supreme Court confronted the question of who owned a loss carryback tax refund claim arising from losses generated during the year of the bankruptcy filing, the estate or the debtors. <u>Id.</u> at 376. Ultimately, the Supreme Court determined that the refund claim was estate property based on its conclusions that the claim was "sufficiently rooted in the pre-bankruptcy past and [was] little entangled with the bankrupts' ability to make an unencumbered fresh start." <u>Id.</u> at 380. The Bankruptcy Code "followed <u>Segal</u> to the extent that it includes after acquired property 'sufficiently rooted in the pre-bankruptcy past' but eliminates the requirement that it not be entangled in the debtor's ability to make a fresh start." <u>In re Richards</u>, 249 B.R. 859, 861

Page 13 - MEMORANDUM OPINION

(Bankr. E.D. Mich. 2000), citing S. Rep. No. 95-989, 95th Cong., 2d Sess. 82, 1978, reprinted in 1978 U.S.C.C.A.N. 5787, 5868; In re Ryerson, 739 F.2d at 1425; and Johnson v. Taxel (In re Johnson), 178 B.R. 216, 218 (9th Cir. BAP 1995).

In this case, the Construction Defect Claims, that ultimately came to fruition as the Settlement Proceeds, arose when residences were constructed on the Properties, and the Endresens purchased them, years in advance of the Endresens' chapter 7 bankruptcy filing. Construction defect claims, of course, by their nature arise from defective construction. The fact that the Endresens' claims were not discovered until 2012, after their chapter 7 case had been filed and closed, with a discharge order entered, is merely fortuitous, likely an artifact of the facts that the properties were rentals and the Endresens were absentee landlords. See, e.g., In re Richards, 249 B.R. at 861 ("All of the allegedly wrongful conduct giving rise to the debtor's claim occurred prepetition, and indeed more than twenty-five years prepetition. Further, although the diagnosis was made seven months after the petition was filed, that timing appears to have been more a result of happenstance than of medical necessity.").

Based on the foregoing analysis, I conclude that the damages from the Construction Defect Claims, and thus, the Settlement Proceeds, are sufficiently rooted in the Endresens' pre-bankruptcy past to constitute property of the Endresens' bankruptcy estate.

Having determined that the Settlement Proceeds are chapter 7 estate assets, I move on to consider the competing claims of the Trustee and the Lenders to the Settlement Proceeds.

C.  Outright Assignment v. Assignment for Security Purposes

        In their opposition memorandum, the Endresens argue that section 11 of the Trust Deeds provides for an assignment and thus an "absolute transfer" of Miscellaneous Proceeds rather than creating a mere security interest in such proceeds.  See Endresens' Opposition Memorandum, at 11-12.  See, e.g., In re Leiferman, Case No. 10-40718 (Bankr. D.S.D. Jan. 19, 2011):

> Debtors did not grant Wells Fargo a security interest in the miscellaneous proceeds.  Debtors instead **assigned** those proceeds to Wells Fargo . . . . The assignment may well operate to protect Wells Fargo from loss in the event Debtors' real property is condemned, damaged or destroyed . . . . However, the Court will not deem the assignment to be a security interest on that basis alone <u>in the absence of language in the mortgage clearly indicating that was the parties' intent</u>.  (Emphasis added.)

The Endresens' argument is undercut by the language of specific provisions in the Trust Deeds.

        The first sentence of section 11 of the Trust Deeds does provide that, "All Miscellaneous Proceeds are hereby assigned and shall be paid to Lender."  However, section 11 continues, to set forth detailed arrangements for the application of Miscellaneous Proceeds to "restoration or repair" of the Properties, and if such restoration or repair is not economically feasible "or Lender's security would be lessened," Miscellaneous Proceeds are to be "applied to the sums secured" by the Trust Deeds, "with the excess, if any, paid to Borrower."  Miscellaneous Proceeds are to "be applied in the order provided for in Section 2."  In the event of total destruction or loss of value of the Properties, Miscellaneous Proceeds are to be applied "to the sums secured" by the Trust Deeds, "with the excess, if any, paid to Borrower."

Page 15 - MEMORANDUM OPINION

Section 2 of the Trust Deeds sets forth detailed instructions for the application of all payments, including Miscellaneous Proceeds, to amounts owed by the Endresens under the Trust Deeds, including interest and principal, consistent with the schedule of Periodic Payments due.

If any Miscellaneous Proceeds were transferred outright to the Lenders, not as a security arrangement, there would be no need for specifying such detailed and restrictive payment arrangements. Certainly, there would be no need for language providing for the payment of any excess funds beyond "sums secured by this Security Instrument" to the Borrower.

Based on the language of the Trust Deeds, I conclude that the Trust Deeds provide for an assignment of Miscellaneous Proceeds for security purposes, creating, in effect, a security agreement, rather than an assignment outright.

D.  The Description of "Miscellaneous Proceeds" in the Trust Deeds

The Trustee argues that the definition of "Miscellaneous Proceeds" in the Trust Deeds does not satisfy the test of ORS 79.0108(1), requiring that a secured party's collateral be "reasonably identified," on two primary grounds.[2]  At the outset, I do not agree that the Trust Deeds were designed to create a security interest in personal property under Article 9 of the UCC, as discussed in detail infra.  However, operating under the assumption that in creating a security arrangement for repayment of a debt, the collateral securing repayment must be reasonably identified as a matter of general contract interpretation, I

_____

[2]ORS § 79.0108(1) provides in relevant part: "[A] description of personal . . . property is sufficient, whether or not it is specific, if it reasonably identifies what is described."

Page 16 - MEMORANDUM OPINION

1   consider the Trustee's arguments.

2       First, the Trustee argues that the Settlement Proceeds are the
3   product of resolution of commercial tort claims that are not described
4   specifically or at all in the definition of "Miscellaneous Proceeds" in
5   the Trust Deeds.  The response to that argument is the Construction
6   Defect Claims were settled, resulting in the Settlement Proceeds, months
7   in advance of the filing of the Adversary Proceeding.  In other words,
8   when the Adversary Proceeding was commenced, there were no outstanding
9   Construction Defect Claims, characterized as "commercial tort claims" or
10  otherwise.  All we ever have been dealing with in this Adversary
11  Proceeding is the Settlement Proceeds.  Accordingly, the relevant
12  question here is whether the definition of "Miscellaneous Proceeds" in
13  the Trust Deeds reasonably identifies the Settlement Proceeds as subject
14  to the Lenders' alleged secured claim.

15      The Trustee argues that it does not, but I disagree.  The
16  definition of "Miscellaneous Proceeds" in the Trust Deeds includes the
17  following: "'Miscellaneous Proceeds' means any compensation, <u>settlement</u>,
18  award of damages, or <u>proceeds paid by any third party</u> . . . for (i)
19  <u>damage to</u>, or destruction of, <u>the Property</u> . . . ."  (Emphasis added.)
20  Recall that the State Court Action included the Endresens' claims that
21  the homes on the Properties were negligently constructed, resulting in
22  damages from their construction defects.  Those claims were settled,
23  resulting in the Settlement Proceeds.  Using the Trustee's argument from
24  ORS 79.0108(2)(f),[3] by analogy, collateral is reasonably identified if

25

26      [3]ORS § 79.0108(2)(f) provides, in relevant part: "[A] description of
    collateral reasonably identifies the collateral if it identifies the
                                                        (continued...)

Page 17 - MEMORANDUM OPINION

1  "the identity of the collateral is objectively determinable" from the

2  description used.  I conclude that the definition of Miscellaneous

3  Proceeds in the Trust Deeds provides an adequate description of the

4  Settlement Proceeds as a settlement or proceeds paid by a third party for

5  damage to the Properties.

6  E.   Interpretation of § 552 in this Context

7          The Trustee argues that § 552 operates to abrogate any secured

8  interest of the Lenders in the Settlement Proceeds that might have been

9  recognized outside of bankruptcy. The subsections of § 552 that concern

10  us are § 552(a) and § 552(b)(1).  § 552(a) provides:

11          Except as provided in subsection (b) of this section,
          property acquired by the estate or by the debtor after
12          the commencement of the case is not subject to any
          lien resulting from any security agreement entered
13          into by the debtor before the commencement of the
          case.  (Emphasis added.)

14

15  With exceptions not relevant to the decision in this matter, § 552(b)(1)

16  provides:

17          [I]f the debtor and an entity entered into a security
          agreement before the commencement of the case, and if
18          the security interest created by such security
          agreement extends to property of the debtor acquired
19          before the commencement of the case and to proceeds,
          products, offspring, or profits of such property, then
20          such security interest extends to such proceeds,
          products, offspring, or profits acquired by the estate
21          after the commencement of the case to the extent
          provided by such security agreement and by applicable
22          nonbankruptcy law, except to any extent that the
          court, after notice and a hearing and based on the
23          equities of the case, orders otherwise.  (Emphasis
          added.)

24

25

26          [3](...continued)
collateral by: . . . any other method, if the identity of the collateral
is objectively determinable."

Page 18 - MEMORANDUM OPINION

1    Initially, the Trustee argues that the Construction Defect
2    Claims "did not accrue (or come into existence)" under Oregon law until
3    after the Endresens filed their chapter 7 petition, making the
4    Construction Defect Claims and the resulting Settlement Proceeds "after-
5    acquired property" for purposes of § 541(a)(7).  Since I just arrived at
6    a contrary conclusion in determining the "property of the estate" issue,
7    see pages 10-15 supra, I reject that argument.  However, I do recognize
8    that the Settlement Proceeds came into existence postpetition; so, I
9    agree that § 552(a) applies.  I do not understand Lenders to argue
10   otherwise.  The real question is whether the "proceeds" exception in
11   § 552(b)(1) likewise applies.

12   i) Attachment

13       The Trustee argues that the Lenders' security interest in the
14   Settlement Proceeds, if any, could not "attach" to the Settlement
15   Proceeds, as after-acquired property, until the subject settlement of the
16   Construction Defect Claims was negotiated postpetition and thus fails in
17   light of the provisions of § 552(a).  In opposition, the Lenders cite
18   Wiersma v. O.H. Kruse Grain and Milling (In re Wiersma), 324 B.R. 92 (9th
19   Cir. BAP 2005), rev'd on jurisdictional grounds, 483 F.3d 933 (9th Cir.
20   2007).

21       In Wiersma, the debtors were dairy farmers who had obtained a
22   loan from Bank of the West secured by their dairy herd and general
23   intangibles, among other things, including "all proceeds and products of
24   the collateral including, but not limited to, the proceeds of any
25   insurance thereon."  Id., 324 B.R. at 99.  Unfortunately, faulty wiring
26   installed at the debtors' dairy facilities caused electrical shocks to

Page 19 - MEMORANDUM OPINION

the cows that made them sick and resulted in their deaths.  Ultimately,
the debtors' entire 2000-head dairy herd was lost.  In September 2000,
the debtors sued their electrical contractor in state court for their
damages caused by the faulty wiring, asserting tort and breach of
contract claims.  Id.

The financial reverses suffered from the loss of their dairy
herd precipitated a chapter 11 bankruptcy filing by the debtors in
October 2001.  In 2002, the debtors negotiated a settlement of their
claims in the state court litigation, resulting in net proceeds to their
estate of approximately $1.6 million.  Id. at 100.  Bank of the West
claimed the net settlement proceeds as its cash collateral.

The debtors filed a motion under § 506(a) to obtain a
determination that Bank of the West did not have a security interest in
the net settlement proceeds, as their state court claims "sounded in
tort, and UCC Article 9 excluded tort claims from the 'general
intangibles' category."  Id.  Bank of the West argued that the net
settlement proceeds were either "general intangibles" or proceeds of its
dairy herd collateral, and in either case, it had a valid security
interest in the net settlement proceeds.  Id.

Following a hearing, the bankruptcy court ruled in favor of
Bank of the West on alternative grounds:  First, the bankruptcy court
characterized the debtors' lawsuit as a contract action, with the result
that Article 9 applied to give Bank of the West a security interest in
the net settlement proceeds as either "general intangibles" or
"accounts."  In the alternative, the bankruptcy court held that the net
settlement proceeds constituted "proceeds" of the bank's livestock

Page 20 - MEMORANDUM OPINION

collateral. <u>Id.</u>

On appeal, the Bankruptcy Appellate Panel ("BAP") concluded that under the current revised version of Article 9 of the UCC, Bank of the West had a valid security interest in the net settlement proceeds as an "after-acquired" payment intangible. <u>Id.</u> at 106-07. However, the BAP also affirmed the bankruptcy court on an alternative ground: "It is clear that rights arising from loss or damage to collateral are 'proceeds,' whether or not insurance covers the loss." <u>Id.</u> at 108. The rationale for the BAP's holding was that the Ninth Circuit had held that the term "proceeds" was to be given the "broadest possible definition," and it made no difference that the loss of the dairy herd occurred prepetition, while the debtors' lawsuit was not resolved and the net settlement proceeds were not realized until postpetition. <u>See, e.g.</u>, <u>Fifteenth RMA Partners, L.P. v. Pac./West Communications Group, Inc. (In re Pac./West Communications Group, Inc.</u>, 301 F.3d 1150, 1153-55 (9th Cir. 2002) ("'The classic situation is that of a tort recovery obtained by a debtor for damage to secured property; the secured creditor obtains a lien on such a payment to replace the diminished value of the security.'"), quoting <u>McGonigle v. Combs</u>, 968 F.2d 810, 828 (9th Cir. 1992).

While the precedential effect of the BAP's decision in <u>Wiersma</u> is vitiated by the subsequent reversal on jurisdictional grounds by the Ninth Circuit, I find the reasoning of <u>Wiersma</u> persuasive, particularly in light of the cited consistent Ninth Circuit authorities. <u>See also</u> <u>In re Encinas</u>, 27 B.R. 79, 80-81 (Bankr. D. Or. 1983):

> All of the above subsections of § 541 must be read in conjunction with 11 U.S.C. § 552(b) which provides that where a debtor and a secured party enter into a security agreement prior to commencement of the case

1          and that agreement covers the proceeds of collateral,
           then such security interest extends to such proceeds
2          acquired by the estate after the commencement of the
           case to the extent provided by such security agreement
3          and by applicable nonbankruptcy law.

4          I conclude that the Lenders' security interest in the

5    Settlement Proceeds attached by virtue of the security arrangements for

6    the assignment of Miscellaneous Proceeds in the Trust Deeds.  I reject

7    Trustee's argument that the Lenders' failure to have an identifiable,

8    properly attached and perfected security interest in the Construction

9    Defect Claims, as commercial tort claims, at the intermediate stage prior

10   to settlement of the Construction Defect Claims automatically vitiates

11   the Lenders' security interest in the Settlement Proceeds vis-a-vis the

12   estate, as inconsistent with the foregoing authorities.

13         Accordingly, while I recognize that the Settlement Proceeds

14   constitute postpetition estate property for purposes of § 552(a), I

15   further conclude that the Settlement Proceeds are identifiable

16   Miscellaneous Proceeds under the Trust Deeds to which Lenders' security

17   interests attach for purposes of § 552(b), as "proceeds" of the Lenders'

18   collateral.  However, that conclusion does not end the inquiry because

19   attachment alone does not necessarily trump the Trustee's entitlement to

20   the Settlement Proceeds.  The question then becomes whether the Lenders'

21   security interest in the Settlement Proceeds is, or is required to be,

22   perfected.

23   ii) <u>Perfection</u>

24         Typically, under the UCC, in order to perfect a security

25   interest in personal property, such as the Settlement Proceeds, a

26   financing statement must be filed.  <u>See</u> ORS § 79.0310.  In this case, it

Page 22 - MEMORANDUM OPINION

is uncontested that, although the Trust Deeds were recorded, no UCC-1
financing statements have been filed to perfect the Lenders' secured
interests in Miscellaneous Proceeds, such as the Settlement Proceeds.
This is the issue that the Trustee seeks to highlight in his proposed
second amended complaint. However, the question of perfection is
embedded in the claims asserted in the Trustee's First Amended Complaint
against the Lenders, and it is implicated in the SJ Motion and Cross-
Motions that I am deciding. That is precisely why I gave the parties the
opportunity to submit further legal memoranda at the Hearing to address
the question of whether a valid security interest in the Settlement
Proceeds could be created under Oregon law without satisfying the normal
perfection requirements of the UCC.

        The answer to that question, somewhat surprisingly, is provided
by provisions of the UCC itself. ORS § 71.3020(1) provides that, "Except
as otherwise provided in subsection (2) of this section or elsewhere in
the [UCC], the effect of provisions of the [UCC] may be varied by
agreement." In analyzing a predecessor provision to ORS § 71.3020(1),
one commentator affirms that "the freedom of contract is not without
limits," but notes that several Oregon decisions have given effect to
agreements that vary UCC provisions. Henry J. Bailey III, Oregon Uniform
Commercial Code Vol. 1, § 1.5, at 10 (1982 ed.). See, e.g., Can-Key
Indus., Inc. v. Indus. Leasing Corp., 286 Or. 173, 593 P.2d 1125 (1979)
(varying the UCC's provision for buyer's acceptance of goods sold); and
Northwest Lumber Sales, Inc. v. Continental Forest Prods., Inc., 261 Or.
480, 495 P.2d 744 (1972) (varying the UCC provision on adequate assurance
of performance with respect to a sales contract).

Page 23 - MEMORANDUM OPINION

In ORS Chapter 79, which contains the UCC provisions with respect to secured transactions, ORS § 79.0201 provides that, "Except as otherwise provided in the [UCC], <u>a security agreement is effective according to its terms between the parties</u>, against purchasers of the collateral, <u>and against creditors</u> [such as the Trustee in this case]." (Emphasis added.)

ORS § 79.0315(3) provides that, "A security interest in <u>proceeds is a perfected security interest if the security interest in the original collateral was perfected</u>." (Emphasis added.) The original collateral here is the Properties. The Settlement Proceeds are proceeds resulting from damage to the Properties, as discussed at page 17 <u>supra</u>. The Lenders' security interest in the Properties was perfected by the recordation of the Trust Deeds in 2004. Article 9 of the UCC does not apply to the assignment of Miscellaneous Proceeds for security purposes in the Lenders' Trust Deeds. However, even if Article 9 of the UCC did apply, under ORS § 79.0315(3), the Lenders were not required to file a financing statement to perfect their security interest in the Settlement Proceeds as proceeds of their collateral.

In support of his position, the Trustee has cited a law review article, G. Ray Warner, "Article 9's Bankrupt Proceeds Rule: Amending Bankruptcy Code Section 552 Through the UCC 'Proceeds' Definition," 46 <u>Gonz L. Rev.</u> 521 et seq. (2011). The premise of the article is that expansion of the definition of "proceeds" in the Uniform Commercial Code was an improper and unwarranted effort by secured creditor advocates to alter bankruptcy outcomes in their favor without in any way expanding the scope of lending. <u>Id.</u> at 521-24. Concern in the article focuses on "new

Page 24 - MEMORANDUM OPINION

1  classes" of proceeds, including "income received by the debtor for

2  leasing or licensing the collateral" and "'rights arising out of

3  collateral.'" Id. at 522.  The article does not address its concerns to

4  "proceeds" resulting from damage or loss of value to a secured creditor's

5  collateral, as we deal with in this case.  And, the article notes the

6  following, consistent with ORS § 79.0315(3), as just described:

7        Other significant nonbankruptcy consequences of
         labeling collateral as proceeds are the <u>automatic</u>
8        <u>perfection</u> and related priority rules.  <u>These rules</u>
         <u>generally provide that, if the original collateral was</u>
9        <u>perfected, its proceeds are perfected automatically</u>
         <u>and enjoy the same priority date as the original</u>
10       <u>collateral</u>.

11 Id. at 523-24. (Emphasis added.)

12       While I sympathize with the concerns expressed in Professor

13 Warner's article, I do not find them to be applicable to the decisions I

14 need to make in this case.

15       The Trust Deeds are not standard form personal property

16 security agreements, but the provisions of the Trust Deeds concerning

17 assignment of Miscellaneous Proceeds function as a security agreement and

18 create a valid security interest that attached to the Settlement

19 Proceeds.  Based on my analysis of provisions of the UCC, as set forth

20 above, even if applicable, which I conclude is not the case, no

21 additional action, including the filing of a financing statement(s), was

22 required to perfect the Lenders' security interest in the Settlement

23 Proceeds.  Accordingly, I conclude that the exception to application of

24 § 552(a) provided for in § 552(b)(1) applies to establish that the

25 Lenders have a valid, persisting security interest in the Settlement

26 Proceeds as proceeds of their collateral, entitling the Lenders to

Page 25 - MEMORANDUM OPINION

summary judgment in their favor on their Cross-Motions.  Leaving no issue
unresolved that the Trustee seeks to raise in a second amended complaint,
I will deny the Trustee's motion to file a second amended complaint.

F.  U.S. Bank Judgment

As noted above, U.S. Bank did not respond to the Trustee's
First Amended Complaint, and a default order has been entered.  At the
Hearing, counsel for the Endresens noted that U.S. Bank's Trust Deeds
have the same provisions relating to assignment of Miscellaneous Proceeds
as are contained in the Lenders' Trust Deeds, and accordingly, U.S. Bank
should be entitled to the benefits of the same analysis applied under
§ 552 as benefit the Lenders.

I disagree for the following reasons.  The Lenders have
participated actively and eloquently in supporting their positions in
this litigation, at the expenditure of great time and effort, and
resulting costs, of their counsel.  U.S. Bank has not even appeared,
although it was properly served with the First Amended Complaint.  I have
concluded that the Lenders' position is supported by the exception to the
application of § 552(a) included in § 552(b)(1).  However, following the
substantive provision in § 552(b)(1) protecting secured creditors'
interests in proceeds is a further exception to the application of
§ 552(b)(1): "except to any extent that the court, after notice and a
hearing and based on the equities of the case, orders otherwise."  In
this situation, I do not find that "the equities of the case" mandate
that U.S. Bank benefit as a free rider from the efforts expended by the
Lenders.  U.S. Bank had ample opportunity to appear and defend its
interest, if any, in the Settlement Proceeds, and it chose not to do so.

Page 26 - MEMORANDUM OPINION

1  I will enter a default judgment in favor of the Trustee and against U.S.
2  Bank on the First Amended Complaint.

3                                  Conclusion

4          Based on the foregoing conclusions, I will grant summary
5  judgment in favor of the Trustee and against the Endresens and the
6  Lenders on the property of the estate issue, but I will grant summary
7  judgment in favor of the Lenders and against the Trustee with respect to
8  the existence and continuing validity of the Lenders' secured interest in
9  the Settlement Proceeds and the impact of § 552.  I will enter a default
10 judgment in favor of the Trustee and against U.S. Bank on the Trustee's
11 First Amended Complaint.  The effective split of the $185,525.47 total
12 Settlement Proceeds is 80% ($148,420.37) to the Lenders and 20%
13 ($37,105.10) to the Trustee.  The parties should submit orders and
14 judgments consistent with this Memorandum Opinion within ten days
15 following the date of its entry.  The court will enter the order denying
16 the Trustee's motion to file a second amended complaint.

17                                    ###

18 cc:      David A. Foraker
          Michael R. Blaskowsky
19        Todd Trierweiler
          David J. Elkanich
20        Sara A.H. Sayles
          Jesse A.P. Baker
21        Garrett S. Garfield

22

23

24

25

26

Page 27 - MEMORANDUM OPINION